IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

FIDELITY NATIONAL TITLE
INSURANCE COMPANY, as subrogee
of RS RENTAL II, LLC, and in
its own right,

    Plaintiff,

v.

                                  No. 2:23-cv-02210-SHM-cgc

WORLDWIDE PROPERTY HUB, LLC,

    Defendant.

---

**ORDER DENYING PLAINTIFF'S SECOND MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Fidelity National Title Insurance Company ("Fidelity"), as subrogee of RS Rental II, LLC ("RS Rental") and in its own right, sues Defendant Worldwide Property Hub, LLC ("Worldwide") for negligent misrepresentation, breach of contract, and breach of warranty of title, all arising from a sale of real property in 2021. (ECF No. 1). On May 22, 2024, Plaintiff moved for summary judgment, which the Court denied as premature on August 28, 2024. (ECF Nos. 25, 36). Before the Court is Plaintiff's Second Motion for Summary Judgment ("Motion"), filed on May 4, 2025. (ECF No. 53). For the reasons set forth below, the Motion is **DENIED**.

# I.    BACKGROUND

## A.    Undisputed Facts

On October 4, 2021, Worldwide entered into a Purchase and Sale Agreement (the "Sale Agreement") to sell real property located at 7245 Butterfly Drive, Memphis, Tennessee (the "Property") to RS Rental. (ECF No. 1, ¶ 6). On November 8, 2021, Worldwide conveyed the Property to RS Rental by warranty deed, providing full warranty of title. (Id. at ¶ 7). In connection with the sale, Worldwide executed an owner's affidavit, representing that there was no "outstanding contract of sale, conveyance, or encumbrance affecting said property" and agreeing to "indemnify and hold harmless" any assignees or successors in interest "against all loss or expense of enforcing" the Sale Agreement. (Id. at ¶¶ 9-10, 13).

Fidelity simultaneously issued a title insurance policy to RS Rental, insuring the Property against "[a]ny defect in or lien encumbrance on the Title." (Id. at ¶ 14). The policy also granted Fidelity subrogation rights, allowing it to pursue claims against third parties for covered losses sustained by RS Rental. (Id. at ¶ 17).

After the sale, RS Rental received notice that the Property was scheduled for foreclosure due to a default on a 2005 deed of

trust executed by a prior owner, in the amount of $81,920.00.  (Id.
at ¶¶ 17-20).  Both RS Rental and Fidelity assert that they were
unaware of the deed of trust at the time of the sale.  (Id.)  RS
Rental subsequently submitted a claim under its title insurance
policy, which Fidelity accepted.  (Id. at ¶¶ 20-22).

To prevent foreclosure, Fidelity paid $77,162.71 to satisfy
the outstanding debt and incurred an additional $5,815.00 in
attorney's fees.  (Id. at ¶¶ 22-23).  The deed of trust was formally
released on November 1, 2022.  (Id. at ¶ 23).  Acting as subrogee
of RS Rental, Fidelity demanded indemnity from Worldwide in the
amount of $82,977.71, representing the total paid to satisfy the
debt and prevent foreclosure.  (ECF No. 55, ¶ 16).  Worldwide
refused to pay.  (Id. at ¶ 17).

On April 11, 2023, Fidelity filed suit against Worldwide,
asserting claims for negligent misrepresentation (Count I), breach
of contract (Count II), and breach of warranty of title (Count
III), based on Worldwide's alleged failure to disclose the 2005
deed of trust.  (ECF No. 1, ¶¶ 25-48).  On May 22, 2024, Fidelity
filed the instant Motion, seeking summary judgment on its claims
for negligent misrepresentation and breach of warranty of title,
but not on its breach of contract claim.  (ECF No. 53).  The Motion
also seeks damages in the amount of $82,977.71.  (Id.)

**B.    Disputed Facts**

On June 13, 2025, Worldwide filed a response opposing Fidelity's Motion. (ECF No. 67). In its response, Worldwide raises several factual disputes that it argues preclude summary judgment.

First, Worldwide asserts that Fidelity, not Worldwide, was responsible for identifying any encumbrances affecting the Property's title. Worldwide cites an agency contract executed on October 19, 2017, under which Fidelity retained Spruce Land Services, LLC ("Spruce") as its policy issuing agent. (Id. at ¶ 1, Exhibit 2). Under that contract, Spruce was responsible for issuing title insurance policies on Fidelity's behalf, including conducting "complete title search[es]" and identifying "all liens, mortgages, and other encumbrances" affecting title to the Property. (Id. at ¶¶ 3, 9-10). Worldwide further asserts that "it is industry standard" for the policy issuing agent to provide search results to the seller. (Id. at ¶ 27).

Second, Worldwide contends that Fidelity had actual knowledge of the 2005 deed of trust at the time of the sale. Worldwide claims that Spruce discovered the deed of trust during its title search and transmitted two "Title Commitments" to Fidelity identifying the encumbrance. (Id. at ¶¶ 14, 18, 22, Exhibits 5 and 7). According to Worldwide, the Title Commitments were

4

internal documents shared between Spruce and Fidelity.   (Id.)
Worldwide describes the Title Commitments as documents outlining
the terms, conditions, and exclusions of a title insurance policy,
including any requirements to be resolved before closing. (Id. at
¶ 11).   Both Title Commitments identified, as a condition of
closing, the need for a "record satisfactory release for the [d]eed
of [t]rust" executed by the prior owner.   (Id. ¶¶ 15, 19).
Worldwide asserts that those documents were never provided to it
before closing.

Third, Worldwide asserts that it lacked knowledge of the deed
of trust during its ownership of the Property.  Worldwide purchased
the Property from its prior owner through a Substitute Trustee's
Deed, recorded on October 14, 2021.  (Id. at ¶ 6).  At the time,
Worldwide had already executed the Sale Agreement with RS Rental.
(Id. at ¶ 7).  Worldwide represents that it relied on Spruce to
perform a complete title search and share the results.  (Id. ¶
27).  Spruce allegedly "refused to send [the] title search" results
to Worldwide, despite having discovered the deed of trust.  (Id.)

Fourth, Worldwide disputes the validity of the owner's
affidavit.  Although Worldwide concedes the affidavit contains
language warranting that the Property was unencumbered, it
contends that the affidavit was drafted entirely by Fidelity and
executed solely at Fidelity's insistence as a condition of closing.

(Id. at ¶ 32).  Worldwide asserts that it had no part in drafting the affidavit and argues that Fidelity cannot reasonably rely on the statements it contains.  (Id.)

Finally, Worldwide alleges that Fidelity "obtained the warranty deed through fraud and misrepresentation." (Id., pp. 14-16).  It contends that both Spruce and Fidelity were aware of the 2005 deed of trust and that Spruce withheld the title search results despite Worldwide's request.  (Id.)  According to Worldwide, on October 15, 2021, Spruce transmitted a third Title Commitment that had been altered to omit any reference to the 2005 deed of trust.  (Id., Exhibit 8).  Worldwide argues that this omission was deliberate, intended to mislead Worldwide into believing the Property was unencumbered and to induce Worldwide to execute the owner's affidavit warranting against encumbrance. (Id.)

On June 27, 2025, Fidelity filed a reply disputing all of the new factual allegations raised in Worldwide's response.  (ECF Nos. 68-70).  Fidelity argues that the Title Commitments are unauthenticated and thus inadmissible at summary judgment.  (ECF No. 70).  Fidelity also denies having knowledge of the 2005 deed of trust.  (Id.)  Fidelity contends that, even if it had prior knowledge of the encumbrance, its knowledge is irrelevant to a claim for breach of warranty of title.  (Id.)  Fidelity asserts

that, to the extent Spruce transmitted any documents to Worldwide, Spruce acted outside the scope of its agency and without Fidelity's authorization.   (ECF Nos. 68-69).

The matter is now fully briefed and ripe for adjudication.

## II.  JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332.  Plaintiff Fidelity is a Florida corporation with its principal place of business in Florida.  (ECF No. 1). Defendant Worldwide is a Tennessee limited liability company whose sole member resides in Memphis, Tennessee.  (Id.)  The amount in controversy is $82,977.71.  (Id.)

Venue is proper in the Western District of Tennessee because Worldwide is subject to the Court's personal jurisdiction.  See 28 U.S.C. § 1391(b)(3).

Because Fidelity's claims arise under Tennessee law and the events giving rise to the dispute occurred in Tennessee, the Court applies Tennessee substantive law and federal procedural law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

## III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), a court may grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); La Pointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993). A fact is "material" if "proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties."  Westfield Ins. Co. v. Enterprise 522, LLC, 34 F.Supp.3d 737, 743 (E.D. Mich. 2014) (citing Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)). There is "genuine dispute of material fact" if a reasonable jury could return a verdict for the non-movant by a preponderance of the evidence.  See Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986).

In evaluating a motion for summary judgment, a court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in that party's favor.  See U.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc., 712 F.3d 321, 327 (6th Cir. 2013).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343,
346 (6th Cir. 1993) (quoting Anderson, 477 U.S. at 251-52)
(internal quotations omitted). "The mere existence of a scintilla
of evidence in support of the [non-movant's] position will be
insufficient" to defeat summary judgment. Anderson, 477 U.S. at
252. Evidence that is "merely colorable" or "not significantly
probative" likewise fails to create a genuine dispute of material
fact. Id. at 249-50.

The movant bears the initial burden of showing the absence of
a genuine dispute of material fact. See Malkamaki v. Sea Ray
Boats, Inc., 411 F.Supp.2d 737, 742 (N.D. Ohio 2005); see also
Celotex, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56) ("[A] party
seeking summary judgment always bears the initial responsibility
of … identifying those portions of 'the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any,' which it believes demonstrates the absence
of a genuine issue of material fact."). "This initial burden
remains with the movant, even when the issue is one on which the
non-movant will bear the burden of proof at trial, such as a
defendant's affirmative defenses." Books A Million, Inc. v. H&N
Enterprises, Inc., 140 F.Supp.2d 846, 851 (S.D. Ohio 2001) (citing
Stillman v. Travelers Ins. Co., 88 F.3d 911, 913-914 (11th Cir.
1996)). Once the movant satisfies its burden, the burden shifts

to the non-movant to identify specific facts demonstrating that a genuine dispute of material fact remains for trial.  <u>See</u> Fed. R. Civ. P. 56(e); <u>see also</u> <u>Cox v. Kentucky Dept. of Transp.</u>, 53 F.3d 146, 150 (6th Cir. 1995).

The Court "is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim."  <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989).  "Summary judgment is 'an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action' rather than a 'disfavored procedural shortcut.'" <u>F.D.I.C. v. Jeff Miller Stables</u>, 573 F.3d 289, 294 (6th Cir. 2009) (quoting <u>Celotex</u>, 477 U.S. at 327).

## IV. ANALYSIS

Fidelity moves for summary judgment on its claims for negligent misrepresentation and breach of warranty of title.  Both claims arise from the covenant against encumbrances in the owner's affidavit, in which Worldwide represented that the Property was conveyed without any "outstanding contract of sale, conveyance, or encumbrance affecting said property."  (ECF No. 1, ¶ 10).

Although Worldwide does not dispute the contents of the affidavit, it raises the affirmative defense of fraud.[1] Specifically, Worldwide argues that Fidelity and its agent, Spruce, intentionally concealed the title defect, thereby inducing Worldwide to execute the affidavit without knowledge of the encumbrance. (ECF No. 67). That defense relies primarily on the exhibits attached to Worldwide's response. (Id., Exhibits 2, 5, 6, 7, and 8). Fidelity responds that the exhibits are inadmissible because they have "not [been] properly authenticated by a business record custodian or any other person with the knowledge that [the evidence] is what it purports to be." (ECF No. 69).

## A.   Admissibility of Worldwide's Exhibits

### 1.   Legal Standard Governing Unauthenticated Materials

The Court must decide whether the exhibits attached to Worldwide's response are admissible at the summary judgment stage.

---

[1] In its answer to the complaint filed on January 12, 2024 (ECF No. 17), Worldwide raised several affirmative defenses, including the equitable doctrines of unclean hands, laches, waiver, mistake, and estoppel. Worldwide has not made any legal arguments to support those defenses or referred to them in its responses to Fidelity's motion for summary judgment. The Court deems those defenses abandoned. See Tennessee Valley Authority v. Fire Star Energy Resources, LLC, No. 3:23-CV-424-TAV-DCP, 2025 WL 1727957, at *4 (E.D. Tenn. Jun. 13, 2025) ("[F]ailure to respond to … arguments regarding certain defenses … constitutes a waiver of those defenses for purposes of summary judgment."); see also Brown v. VHS of Michigan, Inc., 545 Fed. Appx. 368, 372 (6th Cir. 2013) ("a [party] is deemed to have abandoned a claim when [it] fails to address it in response to a motion for summary judgment.").

Federal Rule of Civil Procedure 56(c) governs the admissibility of materials cited to support or oppose a factual assertion in a motion for summary judgment. Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Courts must "disregard any inadmissible portions from the evidence[.]" Weisblat v. John Carroll Univ., 748 F.Supp.3d 517, 527 (N.D. Ohio 2024); see also Wiley v. United States, 20 F.3d 222, 226 (6th Cir. 1994) ("It is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment."). Courts "cannot consider evidence at summary judgment that a jury could not consider at trial." Thomas v. Abercombie & Fitch Co., 301 F.Supp.3d 749, 755 (E.D. Mich. 2018) (citing Gohl v. Livonia Pub. Schs. Sch. Dist., 836 F.3d 672, 681 (6th Cir. 2016)).

Evidence submitted at summary judgment "do[es] not necessarily need to be in a form that is admissible at trial." Hurick v. McKee, No. 17-1396, 2018 WL 4908138, at *3 (6th Cir. Apr. 30, 2018) (citing Celotex, 477 U.S. at 324). However, the non-movant must present evidence that is capable of being presented in admissible form at trial and sufficient to establish a genuine dispute of material fact. See Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009).

Before the 2010 amendments to Rule 56, the Sixth Circuit consistently held that unauthenticated evidence was inadmissible at the summary judgment stage. See Sigler v. Am. Honda Motor Co., 532 F.3d 469, 480-81 (6th Cir. 2008); see also Pack v. Damon Corp., 434 F.3d 810, 815 (6th Cir. 2006). The amended rule now permits parties to cite a broader range of materials, including "depositions, documents, electronically stored information, affidavits or declarations," regardless of whether they are authenticated at the time of submission. Fed. R. Civ. P. 56(c)(1)(A). Unauthenticated evidence may be considered at summary judgment so long as it is capable of being authenticated at trial. See Derrick v. Friar, No. 2:17-cv-2741-SHL-cgc, 2022 WL 20746520, at *3 (W.D. Tenn. Feb. 9, 2022) (citing Davis v. United States, 302 F.Supp.3d 951, 956 (S.D. Ohio 2017)); see also Allen v. Shawney, No. 11-10942, 2014 WL 1089618, at *9-10 (E.D. Mich. Mar. 18, 2014).

Under current Rule 56(c), unauthenticated evidence is not inadmissible per se. Rather, the absence of authentication is grounds for objection. See Forward Magazine, Inc. v. OverDrive, Inc., No. 1:10-cv-1144, 2011 WL 5169384, at *2 (W.D. Mich. Oct. 31, 2011). Once an objection is raised, the burden shifts to the proponent "to show that the material is admissible as presented or to explain the admissible form that is anticipated" at trial. Id.

13

(citing Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment); see also Mangum v. Repp, 674 Fed. Appx. 531, 536-37 (6th Cir. 2017).

Authentication of evidence is governed by Federal Rule of Evidence 104(b). Under that rule, courts must determine whether the proponent "has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic." Forward Magazine, 2011 WL 5169384, at *3 (quoting United States v. Branch, 970 F.2d 1368, 1370 (4th Cir. 1992)). Because authentication is "a question of conditional relevancy," the jury ultimately determines whether the evidence is what its proponent claims it to be. Id. At summary judgment, a prima facie showing of authenticity suffices. Id. (citing Fed. R. Evid. 901(a)); accord United States v. Harvey, 117 F.3d 1044, 1049 (7th Cir. 1997).

## 2.  Application of Rule 56(c) to the Exhibits

Fidelity objects to the following exhibits submitted by Worldwide: (1) the agency contract between Fidelity and Spruce, attached as Exhibit 2; (2) Spurce's title search report, attached as Exhibit 6; and (3) the Title Commitments, attached as Exhibits 5, 7 and 8. (ECF No. 67). None of those exhibits is accompanied by an authenticating affidavit. Under the pre-amendment version of Rule 56, the exhibits would have been inadmissible. See Moore

v. Holbrook, 2 F.3d 697, 698-99 (6th Cir. 1993); see also Fed. R.
Civ. P. 56(e)(1) (2009 version).    Under the amended rule, the
absence of a sworn or certified copy does not render an exhibit
inadmissible.    Rule 56(c) currently expressly "omit[s] as
unnecessary" the prior requirement "that a sworn or certified copy
of a paper referred to in an affidavit or declaration be attached
to the affidavit or declaration."    Ganesh v. United States, 658
Fed. Appx. 217, 220 (6th Cir. 2016) (quoting Fed R. Civ. P. 56(c)).

Although Worldwide has not submitted authenticating
affidavits or explained how it plans to authenticate the exhibits
at trial, the exhibits are admissible at this stage.    Courts have
routinely held that unauthenticated documents may be considered at
summary judgment if they are capable of authentication and if
personal knowledge can reasonably be inferred from the context.
See Peirano v. Momentive Specialty Chems., Inc., No. 2:11-cv-
00281, 2012 WL 4959429, at *7 (S.D. Ohio Oct. 17, 2012); see also
Phinnessee v. Young Touchstone Co., No. 09-1084, 2011 WL 184017,
at *3 (W.D. Tenn. Jan. 20, 2011).    Courts have admitted
unauthenticated evidence where the proponent's personal knowledge
and competence may be inferred from their professional role or
direct involvement in the underlying transactions, and where the
documents are described with sufficient particularity.    See CBR

Funding, LLC v. Jones, No. 13-1280, 2014 WL 11456080, at *4 (W.D.
Tenn. Nov. 4, 2014).

Here, the exhibits at issue – the agency contract, the title
search report, and the Title Commitments – bear sufficient indicia
of reliability and appear on their face to be what Worldwide
purports them to be. The documents are printed on Spruce's and
Fidelity's corporate letterheads, contain verified signatures of
the relevant parties, and refer to the Property sale with
sufficient particularity. Those characteristics support their
authenticity. See Alexander, 576 F.3d at 561 (holding that a
document bearing trade inscription indicating its source may be
self-authenticating under Fed. R. Evid. 902(7)); see also Pass &
Syemour, Inc. v. Hubbell Inc., 532 F.Supp.2d 418, 438 (S.D.N.Y.
2007) (holding corporate marketing materials and reports bearing
company logos may be self-authenticating). Worldwide has
submitted a sworn affidavit from its closing agent, Pamela Webster,
who attests to having received the documents from Spruce in
connection with the transaction and describes their contents in
detail. (ECF No. 67, Exhibit 4). A reasonable juror could
conclude that the exhibits are what they purport to be.

The exhibits at issue are distinguishable from the types of
unauthenticated materials that courts have excluded at summary
judgment, such as unverified handwritten notes, screenshots of

16

commercial websites, and hearsay statements lacking any indicia of
reliability.  See, e.g., Jacqueline Prado v. Mazeika, No. 3:16-
cv-320, 2019 WL 1301729, at *4 (S.D. Ohio Mar. 21, 2019) (excluding
an affidavit containing hearsay statements); United States v.
Rhodes, 788 F.Supp. 339, 342 (E.D. Mich. 1992) (holding that
handwritten notes, certificates of indebtedness, and debt
assignment notes are inadmissible hearsay when not authenticated
as business records); Forward Magazine, 2011 WL 5169384, at *3
(holding that commercial website information must be authenticated
to be considered at summary judgment).

Fidelity has failed to demonstrate that the challenged
exhibits cannot be authenticated at trial.  In the absence of any
specific showing that the exhibits are inherently unreliable or
incapable of authentication, they may be properly considered at
the summary judgment stage.  See Martin v. Performance Boat
Brokerage.com, LLC, 973 F.Supp.2d 820, 822 (W.D. Tenn. 2013)
(quoting Harden v. AlliedBarton Sec. Service, No. 3:10-00779, 2013
WL 2467714, at *8 (M.D. Tenn. Jun. 7, 2013)) ("[W]here there was
no indication [that] proffered evidence was not what it was
purported to be or that it could not be authenticated, [the] court
could consider it when ruling on [a] motion for summary
judgment.").

17

**B.    Negligent Misrepresentation**

In the instant Motion, Fidelity argues that Worldwide failed to exercise reasonable care in executing the owner's affidavit. (ECF No. 1).  Fidelity contends that the affidavit was made "for the purpose of inducing Fidelity to issue the [title insurance] policy," and that Fidelity justifiably relied on the affidavit in doing so.  (ECF No. 1, ¶¶ 25-32).

Tennessee courts "recognize the common-law tort of negligent misrepresentation and have adopted the Restatement (Second) of Torts § 552 (1977) as the guiding principle with regard to these claims."  Fidelity Nat. Title Ins. Co. v. 1st Trust Title, Inc., No. 3:11-00253, 2014 WL 234205, at *5 (M.D. Tenn. Jan. 22, 2014) (citing Hodge v. Craig, 382 S.W.3d 325, 343 (Tenn. 2012)) (citation modified).  The Restatement provides:

> "One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining communicating the information."  Restatement (Second) of Torts § 552 (1977).

18

To establish negligent misrepresentation, a plaintiff must show: "(1) the defendant was acting in the course of a transaction in which he had a pecuniary interest; (2) the defendant supplied faulty information meant to guide others in their business transaction; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relied upon the information." Apollo Hair Sys. of Nashville, Inc. v. Micromode Med. Ltd., No. M2011-01480-COA-R3-CV, 2012 WL 5991779, at *8 (Tenn. Ct. App. Nov. 29, 2012) (citing John Martin Co. v. Morse/Diesel Co., 819 S.W.2d 428, 431 (Tenn. 1991)).

Here, it is undisputed that Worldwide had a pecuniary interest in the Property sale. It is also undisputed that the owner's affidavit falsely stated that the Property was unencumbered, and that the affidavit was intended to guide Fidelity in issuing the title insurance policy. Thus, the analysis focuses on the two remaining elements: (3) whether Worldwide failed to exercise reasonable care in representing that the Property was unencumbered, and (4) whether Fidelity justifiably relied on that representation.

### 1.    Reasonable Care

"[B]efore a seller makes a representation, he is required to exercise reasonable care to make sure that it is correct." Akbari

v. Horn, 641 S.W.2d 506, 508 (Tenn. Ct. App. 1982). Whether that
care is reasonable depends on the foreseeability and magnitude of
the potential harm in relation to the burden of avoiding it. See
Satterfield v. Breeding Insulation Co., 266 S.W.3d 347, 365 (Tenn.
2008) (citing Turner v. Jordan, 957 S.W.2d 815, 818 (Tenn. 1997)).
Tennessee courts define reasonable care as care "commensurate with
the risk of injury." See West v. East Tenn. Pioneer Oil Co., 172
S.W.3d 545, 550 (Tenn. 2005) (citing Doe v. Linder Const. Co., 845
S.W.2d 173, 178 (Tenn. 1992)). A party's conduct is deemed
unreasonable "if the foreseeable probability and gravity of harm
posed … outweigh the burden … to engage in alternative conduct
that would have prevented the harm." Id. at 551 (citing Burroughs
v. Magee, 118 S.W.3d 323, 329 (Tenn. 2003)); see also Staples v.
CBL & Assoc., Inc., 15 S.W.3d 83, 89 (Tenn. 2000); McCall v.
Wilder, 913 S.W.2d 150,153 (Tenn. 1995).

Worldwide failed to exercise reasonable care. The risk that
Fidelity would insure title to encumbered property was both
substantial and foreseeable. (ECF No. 54). As Worldwide
acknowledged, it knew that the owner's affidavit was a condition
for issuing title insurance and closing the sale. (ECF No. 67,
Exhibit 1). To avoid that risk, Worldwide could have conducted a
title search in the Shelby County Register's Office, which would
have revealed the outstanding 2005 deed of trust. The burden of

doing so was minimal in comparison to the foreseeable economic harm, that is, Fidelity's $81,920.00 loss resulting from foreclosure.  (ECF No. 54).  Worldwide failed to take that precaution.

A reasonably prudent seller in Worldwide's position would have independently verified title.  See Mayes v. LeMonte, 122 S.W.3d 142, 145 (Tenn. Ct. App. 2003); see also Dooley v. Everett, 805 S.W.2d 380, 384 (Tenn. Ct. App. 1990) (defining negligence as "doing what a reasonable and prudent person would not do under the given circumstances.").  Although Spruce conducted a title search, it did so as Fidelity's agent; its duties ran to Fidelity, not Worldwide.  Nothing prevented Worldwide from verifying title on its own or through its agent.  If, as Worldwide contends, Spruce refused to share the title search results, that refusal should have heightened, not diminished, a reasonable seller's concerns. A reasonably prudent seller would have viewed that refusal as a red flag and taken additional steps to verify title independently. See Menuskin v. Williams, 145 F.3d 755, 769-70 (6th Cir. 1998) (citing Winstead v. First Tennessee Bank N.A., Memphis, 709 S.W.2d 627, 631 (Tenn. Ct. App. 1986)) (finding a plaintiff acted unreasonably when it "could have simply performed [its] own title search to discover if the titles were encumbered, but [it] instead chose to rely on the [defendant's] assurances[.]").

To the extent Worldwide argues it could not have acted
unreasonably because Fidelity drafted the owner's affidavit, that
argument is unavailing. Even if Fidelity drafted the owner's
affidavit, Worldwide had a duty to verify the truth of its
contents. See Stanfill v. Mountain, 301 S.W.3d 179, 195 (Tenn.
2009) (holding that a "realtor representing the sellers" has a
duty to "ensure that his representations regarding the property
were correct or to make a good-faith inquiry" to verify the
property's conditions); see also Staggs v. Sells, 86 S.W.3d 219,
223 (Tenn. Ct. App. 2001) (holding that a party must exercise
"reasonable care in determining that all representations made in
the contract were true and correct," regardless of who drafted the
document). By failing to take reasonable steps to confirm the
accuracy of its representations, Worldwide fell below the standard
of care expected of a prudent seller.

### 2.    Justifiable Reliance

In addition to showing that the defendant failed to exercise
reasonable care, the plaintiff must demonstrate that it
justifiably relied on the defendant's false representation to its
detriment. See William v. Berube & Assoc., 26 S.W.3d 640, 645
(Tenn. Ct. App. 2000). The burden lies with the plaintiff "to
show that its reliance upon any statements defendants may have
made was reasonable." Id. "A false representation alone" is

insufficient; there must be a "showing by [the] plaintiff that the representation was relied [upon], and that the reliance was reasonable under the circumstances." Homestead Grp., LLC v. Bank of Tenn., 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009). "Justifiable reliance is not blind faith and there is no duty to disclose a fact if ordinary diligence would have revealed it." Id.

Here, there is a genuine dispute of material fact about whether Fidelity's reliance on the owner's affidavit was justified. Fidelity claims it relied on Worldwide's representation that the Property was unencumbered when issuing the title insurance policy. Worldwide counters that Fidelity could not have relied on that representation because Fidelity had prior knowledge of the 2005 deed of trust. Worldwide cites the two Title Commitments prepared by Fidelity's agent Spruce, which identified a need for "satisfactory release for the [d]eed of [t]rust" as a condition of closing. (ECF No. 67, Exhibits 5 and 7). If credible, that evidence suggests that Fidelity was aware, or should have been aware, of the encumbrance before Worldwide executed the owner's affidavit. See Marin v. Washmaster Auto Center, U.S.A., 946 S.W.2d 314, 318 (Tenn. Ct. App. 1996) (citing Simmons v. Sears, Roebuck & Co., 713 S.W.2d 640, 641 (Tenn. 1986) ("Constructive knowledge can be shown by proving … that the defendant, in the

exercise of reasonable care, should have become aware of [the defective] condition.").

"Generally, a party dealing on equal terms with another is not justified in relying upon representations where the means of knowledge are readily within his reach." Metropolitan Gov't of Nashville and Davidson County v. McKinney, 852 S.W.2d 233, 239 (Tenn. Ct. App. 1992) (quoting Solomon v. First Am. Nat'l Bank of Nashville, 774 S.W.2d 935 (Tenn. Ct. App. 1989)). Viewing the record in the light most favorable to Worldwide as the non-movant, a reasonable juror could conclude that Fidelity's reliance on the affidavit was not justified if Fidelity had actual or constructive knowledge of the encumbrance through its agent.

Considering the record as a whole, Fidelity has satisfied the first three elements of negligent representation – namely, that Worldwide had a pecuniary interest in the sale, supplied false information through the owner's affidavit, and failed to exercise reasonable care. However, Fidelity has not established the fourth element, justifiable reliance. The evidence presented by Worldwide creates a genuine issue of material fact about whether Fidelity's alleged prior knowledge of the 2005 deed of trust undermines its reliance on the affidavit. Because resolving that dispute requires credibility determinations and weighing of evidence – functions reserved for the jury – it is inappropriate

for judicial resolution at the summary judgment stage.  See *Bobo v. United States Parcel Serv., Inc.*, 665 F.3d 741, 748 (6th Cir. 2012) ("[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").

### C.   Breach of Warranty of Title

Fidelity also seeks summary judgment on its claim for breach of warranty of title.  It argues that Worldwide conveyed the encumbered Property in violation of the express covenant against encumbrances found in both the owner's affidavit and the warranty deed.  In the owner's affidavit, Worldwide represents that the Property was conveyed without any "outstanding contract of sale, conveyance, or encumbrance[.]"  (ECF No. 1, ¶ 10).

Similarly, the warranty deed provides:

"[Worldwide Property Hub, LLC] does hereby covenant with [RS Rental II, LLC] that it is lawfully seized in fee of the aforedescribed real estate; that it has a good right to sell and convey the same; that same is unencumbered except: 2022 City of Memphis and 2022 Shelby County real property taxes, [b]eing liens not yet due and payable … all being of record in said Shelby County Register's Office and that title and quiet possession thereto it

will warrant and forever defend against the lawful claims of all persons." (ECF No. 1, ¶ 9, Exhibit 1).

Both the warranty deed and the owner's affidavit unequivocally covenant against encumbrances. Under Tennessee law, "[t]he covenant against encumbrances, if untrue, is broken as soon as it is made." Erwin v. Greater River Road Supercross, LLC, No. W2019-01005-COA-R3-CV, 2020 WL 7055351, at *3 (Tenn. Ct. App. Dec. 1. 2020) (citing Amos v. Carson, 210 S.W.2d 677, 679 (Tenn. 1948)). That covenant protects the grantee from third-party interests that diminish the property's value, even if those interests do not prevent the transfer of legal title. See Amos, 210 S.W.3d at 679. By delivering a warranty deed, the grantor assumes the risk of any undisclosed encumbrances. See id. "The grantee's actual or constructive knowledge of the encumbrance is irrelevant." Erwin, 2020 WL 7055351, at *3 (citing Murdock Acceptance Corp. v. Aaron, 230 S.W.2d 401, 405 (Tenn. 1950)).

Absent fraud or mutual mistake, a covenant expressly stated in a deed will not be overturned if the terms are unambiguous on its face. See Continental Land Co., Inc. v. Investment Properties Co., No. M1998-00431-COA-R3-CV, 1999 WL 1129025, at *4 (Tenn. Ct. App. Dec. 10, 1999) (citing City of Memphis v. Moore, 818 S.W.2d 13, 16 (Tenn. Ct. App. 1991)). Once the deed is delivered and accepted without qualification, it functions as the final contract

26

the governs the parties' rights.  See Archer v. The Home Team,
Inc., No. M2019-01898-COA-R3-CV, 2020 WL 6075705, at *8 (Tenn. Ct.
App. Oct 15, 2020); see also McRae v. Hagaman, No. E2004-00852-
COA-R3-CV, 2004 WL 2378109, at *6 (Tenn. Ct. App. Oct. 25, 2004)
(citing Fuller v. McCallum & Robinson, 118 S.W.2d 1028, 1037 (Tenn.
Ct. App. 1937)); see also Gurley v. Hickory Withe Partners, L.P.,
No. W2002-02050-COA-R3-CV, 2003 WL 22204520, at *3 (Tenn. Ct. App.
Sept. 10, 2003).

Here, the record establishes that Worldwide conveyed the
Property to RS Rental by warranty deed dated November 8, 2021,
which was recorded in the Shelby County Register's Office.  (ECF
No. 1 ¶ 7).  Worldwide does not dispute that the deed was properly
delivered and accepted.  However, Worldwide claims that "Fidelity
obtained the warranty deed through fraud and misrepresentation."
(ECF No. 67).  The Court construes that claim as an affirmative
defense of fraud, which Worldwide raises for the first time in its
response to Fidelity's motion for summary judgment.

### 1.    Timeliness of the Fraud Defense

The threshold issue is whether Worldwide's fraud defense is
timely.  Ordinarily, affirmative defenses must be raised in a
responsive pleading, or they are deemed waived.  See Horton v.
Potter, 369 F.3d 906, 911 (6th Cir. 2004) (citing Fed. R. Civ. P.
8(c)).  However, the Sixth Circuit permits a defendant to raise an

affirmative defense later in the litigation, including at summary judgment, so long as doing so "does not result in surprise or unfair prejudice to the plaintiff." Wallace v. Coffee County, Tenn., 852 Fed. Appx. 871, 875 (6th Cir. 2021) (citing Stupak-Thrall v. Glickman, 346 F.3d 579, 585 (6th Cir. 2003)). Courts have allowed affirmative defenses to be raised for the first time in response to a summary judgment motion. See Can IV Packard Square LLC v. Schubiner, No. 19-CV-12360, 2021 WL 3621324, at *7 (E.D. Mich. Aug. 16, 2021) (citing Westwood Chem. Co. v. Kulick, 656 F.2d 1224, 1227 (6th Cir. 1981)); see also Moore, Owen, Thomas & Co. v. Coffey, 992 F.2d 1439, 1445 (6th Cir. 1993). Whether to permit a party to raise an affirmative defense at summary judgment lies within the district court's discretion. See Rogers v. I.R.S., 822 F.3d 854, 856 (6th Cir. 2016) (citing Lauderdale v. Wells Fargo Home Mortg., 552 Fed. Appx. 566, 573 (6th Cir. 2014)).

Although raised late, Worldwide's fraud defense does not cause surprise or unfair prejudice to Fidelity. Fidelity had a full opportunity to respond to Worldwide's fraud defense and did so by challenging the admissibility of Worldwide's supporting evidence as unauthenticated business records. (ECF No. 70). Courts generally find no prejudice where the opposing party can address the defense in its briefing and where its late assertion does not delay discovery or trial. See Phelps v. McClellan, 30

F.3d 658, 662 (6th Cir. 1994) (finding no prejudice where raising a new defense did not "require the opponent to expend significant additional resources to conduct discovery and prepare for trial[,] significantly delay the resolution of the dispute[,] or prevent the plaintiff from bringing a timely action in another jurisdiction."); ATSCO Holding Corp. v. Air Tool Services Co., 799 Fed. Appx. 310, 312 (6th Cir. 2019) ("A defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time and the plaintiff was not prejudiced in its ability to respond.") (internal quotations omitted). Worldwide's late assertion of fraud does not constitute a waiver of that defense. The Court will consider it on the merits.

### 2.  Merits of the Fraud Defense

A defendant raising an affirmative defense bears the burden of proving each of its elements. See Martin v. Ohio, 480 U.S. 228, 235 (1987) ("[T]he common-law rule was that affirmative defenses … were matters for the defendant to prove."). That burden applies even at the summary judgment stage, where courts must evaluate the evidence and draw all reasonable inferences in the light most favorable to the non-movant. See Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003); see also Davis v. McCourt, 226 F.3d 506, 511 (6th Cir. 2000).

In Tennessee, the elements of fraud are: "(1) an intentional misrepresentation of a material fact; (2) knowledge of the representation's falsity; (3) an injury caused by reasonable reliance on the representation; and (4) the requirement that the misrepresentation involve a past or existing fact."[2] Mid-South Industries, Inc. v. Martin Mach. & Tool, Inc., 342 S.W.3d 19, 28 (Tenn. Ct. App. 2010) (citing Dobbs v. Guenther, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992)); see also Kincaid v. SouthTrust Bank, 221 S.W.3d 32, 40 (Tenn. Ct. App. 2006). Where fraud is raised as an affirmative defense at summary judgment, the defendant must produce evidence sufficient to establish each element by a preponderance of the evidence. See Anderson, 477 U.S. at 252.

Here, neither Fidelity nor Worldwide disputes the existence of the 2005 deed of trust at the time of closing, which satisfies the fourth element of the fraud defense. The analysis therefore turns on the first three elements: (1) intentional misrepresentation; (2) knowledge of falsity; and (3) injury caused by reasonable reliance.

### a.   Intentional Misrepresentation

---

[2] In Tennessee, fraud, fraudulent misrepresentation, and intentional misrepresentation "are different names for the same cause of action." Hodge v. Craig, 382 S.W.3d 325, 342 (Tenn. 2012) (citing Concrete Spaces, Inc. v. Sender, 2 S.W.3d 901, 904 n.1 (Tenn. 1999)).

"A person acts intentionally when it is the person's conscious objective or desire to engage in the conduct or cause the result." Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 (Tenn. 1992). Tennessee courts recognize that "fraud[,] by its nature[,] is often difficult to prove and thus may be properly proved by wholly circumstantial evidence." Brown v. Birman Managed Care, Inc., 42 S.W.3d 62, 67 (Tenn. 2001) (citing Parrott v. Parrott, 48 Tenn. 681, 687 (Tenn. 1870)). Fraudulent intent may be inferred from the totality of the circumstances. See PNC Multifamily Capital Inst. Fund XXVI Ltd. Partnership v. Bluff City Community Dev. Corp., 387 S.W.3d 525, 547 (Tenn Ct. App. 2012).

Worldwide claims that Fidelity, acting through its agent Spruce, intentionally mispresented the condition of title by withholding title search results. Worldwide relies on the two Title Commitments that explicitly required a "record satisfactory release" of the 2005 deed of trust as a condition of closing. (ECF No. 67 ¶¶ 14-19, Exhibits 5 and 7). Worldwide argues that Spruce later transmitted a third Title Commitment that omitted any reference to the deed of trust. (Id. at ¶ 22, Exhibit 8). It asserts that the altered document was sent to induce Worldwide to execute the owner's affidavit. (Id.)

Fidelity disputes those allegations. It denies that it or Spruce transmitted any documents misrepresenting the status of

title to Worldwide.  (ECF No. 70).  Fidelity also argues that, to the extent Spruce sent any documents directly to Worldwide, it acted outside the scope of its agency authority.  (Id.)  Neither party, however, has presented evidence detailing the scope of Spruce's agency at the time of the sale.  Determining the existence and scope of an agency relationship is a fact-intensive inquiry that often turns on witness credibility and the parties' conduct.  See White v. Revco Discount Drug Centers, Inc., 33 S.W.3d 713, 723 (Tenn. 2000); see also McCay v. Mitchell, 463 S.W.2d 710, 715 (Tenn. 1970) (noting that determining the scope of agency "is a question of fact under the circumstances of the particular case … [and] determined by the relation of the parties as they in fact exist under their agreements or acts.").  Given the parties' directly conflicting accounts, whether Fidelity intentionally misrepresented the title condition is a question for the jury.  There is a genuine dispute of material fact.

### b.   Knowledge of Falsity

To prove knowledge of falsity, the party alleging fraud must show that the misrepresentation "was made 'knowingly[,]' or 'without belief in its truth[,]' or 'recklessly' without regard to its truth or falsity.'"  Oak Ridge Precision Indus., Inc. v. First Tennessee Bank Nat'l Ass'n, 835 S.W.2d 25, 29 (Tenn. Ct. App. 1992) (quoting Stacks v. Saunders, 812 S.W.2d 587 (Tenn. Ct. App. 1986)).

Fraud may also arise from "concealment or nondisclosure" when the party "has knowledge of an existing fact or condition and a duty to disclose." Hill v. John Banks Buick, Inc., 875 S.W.2d 667, 670 (Tenn. Ct. App. 1993) (citing Lonning v. Jim Walter Homes, Inc., 725 S.W.2d 682, 685 (Tenn. Ct. App. 1986)).

Worldwide offers circumstantial evidence that both Spruce and Fidelity were aware of the 2005 deed of trust prior to closing. The two initial Title Commitments explicitly referred to the deed of trust. (ECF No. 67 ¶ 14-19, Exhibits 5 and 7). Both documents were printed on Fidelity's corporate letterhead and signed by Fidelity's president. (Id.) According to Worldwide, Fidelity's review of those documents demonstrates actual knowledge of the encumbrance. (Id.) That knowledge renders the third Title Commitment knowingly false or, at a minimum, recklessly indifferent to the truth.

Fidelity responds that its knowledge of the encumbrance, whether actual or constructive, is irrelevant to a breach of warranty of title claim. Under Tennessee law, a grantee's knowledge of an encumbrance does not preclude recovery for breach of the covenant of encumbrances. See Murdock, 230 S.W.2d at 405 (holding that "notice that the encumbrance existed would not preclude the [plaintiff's] reliance upon a covenant that [the encumbrance] did not exist."); see also Brown v. Taylor, 88 S.W.

33

933, 934 (Tenn. 1905) ("Knowledge on the part of the purchaser of the existence of [e]ncumbrances on the land will not prevent him from recovering damages on account of it, where he protects himself by proper covenants in his deed."). Although Fidelity is correct that a grantee's knowledge is immaterial to a breach-of-warranty claim, that principle does not apply when fraud is raised as an affirmative defense. A party's awareness of facts contradicting its own representations is central to establishing fraudulent intent. See McKinney, 852 S.W.2d at 239.

Here, whether Fidelity and Spruce knew of the 2005 deed of trust and deliberately concealed that fact from Worldwide is a disputed issue of material fact. Those facts turn on credibility and the inferences a reasonable juror could draw from Fidelity's review and use of the Title Commitments, making them unsuitable for resolution at summary judgement.

### c.   Injury Caused by Reasonable Reliance

Generally, whether reliance is reasonable is "a question of fact" and thus "inappropriate for summary judgment." City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996). Tennessee courts have granted summary judgment on the reasonable reliance element only when "[the] evidence in the record could lead a reasonable jury to only one conclusion[.]" Beard v. Odom, No. E2024-00737-COA-R3-CV, 2025 WL 2017474, at *5 (Tenn. Ct.

App. Jul. 18, 2025) (citing Annaco, Inc. v. Corbin, No. 02A01-9804-CH-00111, 1998 WL 929637, at *4 (Tenn. Ct. App. Dec. 31, 1998).

Here, there is a genuine issue of material fact. Fidelity and Worldwide claim that they relied on the other party's misrepresentations in completing the transaction. Neither side has presented conclusive evidence that its reliance was reasonable under the circumstances. (ECF Nos. 67, 70). Although Worldwide asserts that "it is industry standard" for sellers to rely on the buyer's title agent in property transactions, it has produced no evidence to support that assertion, and Fidelity has not offered evidence to the contrary. (ECF No. 67, ¶ 27). Based on the current record, the Court cannot determine as a matter of law whether Worldwide's reliance on the Title Commitments was reasonable. That determination must be left to the jury.

Because fraud, if established, constitutes a complete defense to Fidelity's breach of warranty of title claim, genuine disputes of material fact remain for trial. Summary judgment is inappropriate.

## V.    CONCLUSION

For the reasons stated above, Plaintiff Fidelity's Second Motion for Summary Judgment, filed on May 4, 2025 (ECF No. 53), is **DENIED**.

**SO ORDERED** this _26th_ day of August, 2025.


/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE